Good morning. May it please the Court, Carolina Castaneda and Mario Acosta, Jr., on behalf of the petitioner, Rocio Lopez-Olivares. At this moment, I would like to reserve two minutes of my time for rebuttal, Your Honors. Your Honors, in this Court, the Board erroneously dismissed the petitioner's appeal for the following three reasons. First, the controlling authority in this case is Rodriguez Echeverria. Second, the Court erroneously determined that the controlling authority was Samayoa when that case was, in fact, erroneously decided and is distinguishable from the case at hand. And third, the Board failed to consider whether the petitioner was eligible for Bible cancellation of removal. As to my first point, Your Honors, the controlling authority in this case is, in fact, Rodriguez Echeverria. In that case, the Board, the Ninth Circuit held that an individual who has been arrested without a warrant is entitled to certain advisals, such as the right to have an attorney and the right to remain silent. Sotomayor, I thought what they did in that case was essentially remand to the Board. Did you decide anything, really? Yes, Your Honor. Although the Court ultimately remanded the case to the Board, the Court nonetheless found that an individual who has been arrested without a warrant is entitled to certain advisals, and the case at a minimum stands for that proposition. Doesn't he also have to be placed in formal removal proceedings before that right is triggered? No, Your Honor, not necessarily. That is what the court in Samayoa found. However, that analysis is incorrect. Well, that doesn't do you a lot of good today, does it? Aren't we bound by the prior presidential decision of our own court? No, Your Honor. The Samayoa decision did not effectively overrule Echeverria. Both are still. So you're saying we can disregard it because you don't think it effectively overruled a preceding decision? How do we disregard it? Your Honor, the court should determine that Samayoa was wrongly decided. Well, stop. Because I understand this might be something you're not familiar with, but are you under the impression that we have the power to do what you just asked us to do? Because we don't. A three-judge panel of this Court cannot overrule an existing precedent of the Court. As wrongly decided as we may think it is, it doesn't matter. We don't have that authority. Only an en banc panel of the Court can do that. Yes, Your Honor, and that is correct. So why are you asking us to overrule this decision? I apologize, Your Honor. Not to overrule. However, the court should find that the controlling authority is nonetheless Rodriguez-Echeverria. Well, wait, wait, wait. How do we find that? How do we disregard the intervening authority simply by deciding the controlling authority is something different? Because, Your Honor, the Samayoa decision was wrongly decided. See, that's my problem. Because we can't decide that. We have to accept that as the law that binds us. Unless you can distinguish it in some fashion, all you can do is try to persuade us to call for an en banc rehearing of the case. It is not up to us to decide that that case was wrongly decided. And so for you to argue that to us is futile. And it is distinguishable, Your Honor, also. Also, didn't the BIA, after these cases, decide its own presidential decision, taking this, saying specifically that this doesn't apply until – I mean, it's a crazy rule. I agree with you. But it appears to be the rule, that is, that you don't get these warnings until you're in formal proceedings. And the BIA has so held itself in a presidential decision now, has it not? Yes, Your Honor. That is correct. In a matter of ERFMS. Right. So what are we supposed to do with that? Your Honor, however, the BIA in that case also cited Samayoa finding that that was a controlling authority. However, the board and the Ninth Circuit in Samayoa did not specifically explain why Rodriguez Echeverria did not apply. Well, Your Honor, look, I have – I suggest you move on. I have Rodriguez Echeverria in front of me. It doesn't decide this question at all. All it says is this guy was under arrest, they were wrong about that, and now the BIA on remand should determine in the first instance whether 287.3 requires the officers to warn Rodriguez prior to interrogation if she had a right to counsel. And they ultimately decided no, so I don't know what you're standing on. Your Honor, but the Samayoa decision, nonetheless, is distinguishable for a couple of reasons. The first being, Your Honor, that that decision failed to follow stare decisis. All right. Do you have any other arguments? Yes, Your Honor. Furthermore, the facts of that case, the court reasoned that the term placed in removal proceedings meant that the individual, that the filing of the NTA had been done with the court, that the NTA had been filed with the court. However, there is no logical explanation or analysis as to how place, how the term placed means the initiation of removal proceedings. But don't you again argue that it was just wrongly decided? Yes, Your Honor. However, it's also factually dissimilar. In that case, the court focused on whether military police officers had to follow INS regulations. And, in fact, the court determined that that was not the case, that the INS regulations did not apply to military police. Therefore, the case is also distinguishable on those grounds because it has nothing to do whether, with military police officers having to follow INS regulations. And in this case, the Petitioner was, in fact, arrested by Border Patrol officers who are required to follow the INS regulations in this case. And here, the Petitioner was, in fact, arrested, and she was never advised of any of her rights. As we can see from this case. Your client was, had a cancellation of removal for domestic abuse earlier, right? That is correct, Your Honor. The lawyer at the, were you the lawyer in the administrative proceeding? No, Your Honor, we were not. Well, the lawyer before the IJ and the IJ and the government lawyer, all of whom agree that this was a very harsh result, thought that she was not eligible for a second cancellation of removal. Is that correct, given that she was a VAWA, VAWA, is that what you're saying? No, Your Honor, that is not correct. It is true that the Petitioner in this case had been granted VAWA cancellation of removal as a non-permanent resident. However, the BIA in a decision, matter of MA, determined that an individual who has been previously granted VAWA cancellation is eligible for VAWA cancellation again as a legal permanent resident. And in this case, the Court or the Board never addressed. And there's a different time limit, too, right? Yes, Your Honor. So they were all wrong about that. Yes, Your Honor. The Court never addressed whether or not the Respondent would have, the Petitioner, would have been eligible. It wasn't asked to address it, was it? That is correct, Your Honor. And unfortunately, we weren't the attorneys of record before, and I'm not sure why it wasn't raised. However, the Board should have addressed whether or not she was in fact eligible for a different type of cancellation of removal, not the standard cancellation of removal, but VAWA cancellation of removal. Because the purpose And has you and the government, have you suggested or is the government suggesting mediating this case in light of that mistake? I understand we can't reach it. It's not before us. But has anybody, has there been any mediation of this case? Not with respect to that issue, as far as I know, Your Honor. Or any issue? I apologize? Or any issue? No, Your Honor. Okay. However, nonetheless, the respondent, the Petitioner, in this case, would have been eligible for that type of relief, VAWA cancellation of removal. And, Your Honor, back to my first point, the Rodriguez-Echeverria decision should have been the controlling authority. Because in this case, like in Rodriguez, the Petitioner was in fact arrested. If we look at the record at page 178, the report of investigation notes that the Petitioner was arrested. We also know from the record that she attempted to enter the country at 2.55 p.m. and that the form I-213 was issued at 10.11. Let me ask you another question. The BIA held, I thought, that quite aside from the merits of this suppression question, that you had, that your client didn't raise a suppression issue in, before the IJ, and therefore had waived it. What about that? That is correct, Your Honor. The prior. I know it's correct. I want to know what the answer is to that. The prior counsel did not raise an objection, a suppression issue. However, the Rodriguez-Echeverria decision does not require that the individual move to suppress the evidence. And furthermore, Your Honor, the suppression argument stems from the Rodriguez-Echeverria decision, which came after the Petitioner was placed in immigration court proceedings. Your Honor, I would like to reserve the rest of my time for rebuttal. Thank you. Thank you. May it please the Court, I am Sarah Byram, appearing on behalf of the Attorney General. This Court should deny the petition for review in this case. There are two independent dispositive bases upon which the Court can deny. First, the record does not compel reversal of the agency's finding that the Petitioner is inadmissible for alien smuggling. And second, the Petitioner does not deny the Petitioner is inadmissible for alien smuggling. The Court can also deny her petition for review based on waiver. Turning to the first point, the record does not compel reversal of the agency's inadmissibility finding. Here, the government brought clear and convincing evidence in the form of numerous documents, all of which were uncontested before the immigration judge by Petitioner. Are you talking about besides her statements? Excuse me? Are you talking about in addition to the statements she made? In addition to the statements that she made, yes. They also brought some additional referral forms as part of the packet that they had submitted. All of the forms were uncontested. With respect to her statements, are the referral forms based on her statements? They are, yes. They are summary-based. I don't understand how these are separate points. That was my question. Are they separate or are you talking about her statements, essentially? I'm talking about her statements generally. Here, these documents within which summarize her statements and which they contain are probative and fundamentally fair. She has been. Well, I don't think anybody is suggesting that if the confession is there and everything based on the confession is there, that she was inadmissible for smuggling. So if that's where you can argue, you can just assume it. So go on. But the question is, what about the suppression question? With respect to the suppression question, we argue that First Petitioner waived her challenges by failing to raise them before the immigration judge. The Board was reasonable in finding this because she could have brought them to the immigration judge, and at that point the immigration judge could have taken any necessary procedural steps to look into those and potentially address any issues that she raised at that point if she was contested. And the Board then went on, you know, at some length to discuss the suppression question itself. Yes. Are you viewing these as alternative rulings or what? Yes, I'm viewing it. We are viewing it as an alternative ruling. First, they held that it was waived, even assuming it was not waived. Because if they simply address, I mean, in general, what's weird about this is that in general the point of an exhaustion requirement from our point of view is that the So if we thought it was wrong, we would still ignore the whole thing because the Board was entitled to consider it internally waived? Is that the point? Well, yes. You could ignore it if you wanted, and on the basis that they made the alternative finding and they did address the suppression issue on the merits, which this Court has held in Samoia as the Board referred, that the Petitioner does not have to be given the required advisers under 287 until after placed in removal proceedings. Here she was not placed in removal proceedings at the time, and therefore the Customs and Border Patrol officials acted in accordance with the regulation in taking her statements and using them against her later on. Can we stop for a moment and go to the question that I raised before? I mean, without committing you at all, because I don't know whether you've even looked into it, but it appears that there's a colorable question whether she actually would have been and would now be eligible for valid cancellation. Do you think that's wrong, clearly wrong, or? Our position is that it's clearly wrong because she has been granted cancellation of removal one time already. Right. And under the statute 8 U.S.C. 1229. As to valid, there's a provision that says you can only get one. Yes, you can only be granted cancellation of removal once. As to this kind of cancellation? The statute just says cancellation of removal. But it's in a different section. It isn't talking about this cancellation. This is only relevant to the question of what about mediating this case. Right, right. Here you have somebody who's been here a very long time, who everybody agreed that this was – I mean, everybody at the hearing agreed that this was really severe, and it appears that she may have a leg to stand on, even though it wasn't exhaustive. So the question is, what does the agency think about sending the case to mediation? We would certainly entertain mediating the case. Again, we feel that she cannot be granted cancellation, again, under the statute. And I just wanted to note, too, that the facts in AM are distinguishable. In matter of AM, the Petitioner in that case was granted legal permanent residency status through self-petitioning. She did not receive cancellation of removal the first time. So when she was granted, it was just this first time. But we would be open to considering mediation. I'd have to obviously also go back to my client agencies. She is an enforcement priority, given the smuggling. But with that being said, we – This is smuggling light, if you will. I mean, she – these were her niece and nephew. She was rescuing them from a coyote. This is not any kind of extensive organization in which she's participating for commercial or other gain, other than helping the mother of these children. It is. We recognize that. Unfortunately, the statute has the permanent bar, so we are somewhat constrained by that. But we do recognize the facts of this case. I mean, it was even suggested at the hearing that you could have withdrawn the NTA initiative later, in which case she would have been eligible for cancellation. Possibly. Possibly. That is something that I would have to take back to my client agencies. I am constrained. All right. Go ahead with your argument. If there are no further questions, I would conclude. Thank you very much. At bottom, the probative and fundamentally fair evidence overwhelmingly proves that the agency – as the agency determined, she is admissible. Her statements are not suppressible because she was not in removal proceedings at the time that she gave them, and therefore suppression is not warranted. And the evidence also indicates that she did waive her suppression challenges and the board's discussion of the suppression challenges also indicates that because she was not in removal proceedings, no suppression is warranted. With respect to VAWA, we hold that she is not eligible for VAWA again, but as this panel has suggested, we would consider discussing this case further in mediation. Thank you. And you are? Good morning. May it please the Court. I'm Mario Costa. I'm co-counsel, and I'll be providing the rebuttal arguments. I want to just briefly touch on the matter of E case. The reality is that the respondent in that case was granted VAWA relief. It was relief under the VAWA statute. And the BIA went to great lengths to not just look at just simply the language of the statute, but what legislative intent was. Because obviously VAWA cancellation is under the heading of non-LPR cancellation. But they really made an effort to try to reconcile what the intent of VAWA is and to kind of make the point we don't just want to exclude legal permanent residents from VAWA. So I think it's important to note VAWA relief was granted to the respondent in that case. It was granted to petitioner in this case. I understand that there's the cancellation bar that we're all aware of. However, the same reasons that the BIA found an exception in that case to VAWA, at the very least the BIA should have the first bite at the apple. It didn't have an opportunity to rule on that. Secondly, and I want to just touch on this real quickly. I understand the Court's concern with arguing that San Mario was wrongly decided. I think really if you're going to remand this case, it would be important to ask the Board to apply its 2011 decision in matter of E when it actually defined or better yet. Sotomayor What if it does? Doesn't she lose? Martinez Exactly. Because here you're going to. Sotomayor She doesn't lose at that point? Martinez No. Because I think that fundamentally if you look at Rodriguez, Rodriguez really focused. Sotomayor Rodriguez didn't decide anything. Martinez Right. Rodriguez has decided. San Mario then. Sotomayor Rodriguez didn't decide anything. All it did was remand to the Board and it was a decision that resulted in this other case. Martinez Agreed, Your Honor. But if you look at San Mario as well. Sotomayor If you agree, then why were we arguing otherwise for five minutes? Martinez Well, because essentially I guess. Sotomayor That's a mistake. Go ahead. Martinez Yes. I agree it's a mistake. What I basically want to touch on is it comes down to how do you define the word placed. If you look at the statute, it's arrest and along with placed in formal proceedings. Sotomayor But I thought the Board has already decided. I mean, does this make any sense? Not to me. But I thought the Board has already decided that what it needs is filed with the EIR. Martinez And I agree with you, Your Honor. They have. And I think for that reason, at that point, if the Board finds that that case applies to the Petitioner's case. Sotomayor And why wouldn't it? Martinez Well, because I think that it comes down to the word placed. Whether or not the BIA's construction of the word placed is entitled to deference. And I think that's where we're kind of missing. I think that's where Somalia and Rodriguez missed an important opportunity. Sotomayor But then we'd have to reverse our own opinion. Martinez Absolutely. Which I understand. Sotomayor Which we can't do. Martinez No. But I believe that once the Court rules like I believe it's inclined to rule, that may be something that the en banc court might take. And I thank you. Sotomayor Thank you very much. Martinez Okay. Roberts Thank you. Sotomayor All right. Thank you both for your argument. The case of Lopez-Olivares v. Holmes was submitted. And the next case. Well, yes, we're probably going to perhaps not submit it and have a mediation order, and so it won't be submitted until after the results of at least the inquiry into mediation. Okay. Thank you.
judges: Rosenthal, Berzon, Clifton